UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

LONNIE C. THOMAS, III,

                    Plaintiff,                          Case No. 2:23-cv-191

v.                                                      Honorable Hala Y. Jarbou

MICHIGAN DEPARTMENT OF
CORRECTIONS et al.,

                    Defendants.
_____/

## OPINION

This is a civil rights action brought under 42 U.S.C. § 1983. The Court has granted Plaintiff

leave to proceed *in forma pauperis* in a separate order. Pursuant to 28 U.S.C. § 636(c) and Rule 73

of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action

under the jurisdiction of a United States magistrate judge. (Am. Compl., ECF No. 21, PageID.50.)

Plaintiff Thomas's amended complaint is presently before the Court for preliminary review

under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA),

pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is

required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig.*

*Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601,

604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular

significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless

notified of the action, and brought under a court's authority, by formal process." *Murphy Bros.,*

*Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under

longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I. Relevant Procedural History and Factual Allegations

Presently before the Court is Plaintiff Lonnie C. Thomas, III's amended complaint. Thomas is presently incarcerated at the Baraga Correctional Facility (AMF) in Baraga, Michigan.

The initial complaint was signed by Plaintiff Thomas. Several other AMF prisoners were identified as plaintiffs in Mr. Thomas's initial complaint: LeShawn K. Glover, James Edward Kitchen, Daniel Canfield, William Kent Gleason, Victor Lindsey, Kiss, Richard Doyle, and Kiyel Justin Johnson. None of the other prisoners identified as plaintiffs had signed the initial complaint.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

Plaintiff Thomas initially sued the Michigan Department of Corrections (MDOC), MDOC Director Heidi E. Washington, AMF Warden J. Howard, AMF Deputy Warden N. Hoffman, AMF Assistant Deputy Warden Rebecca Horrocks, MDOC Correctional Facility Administrators Jerry Bush and N. Killough, AMF Resident Unit Managers T. Perttu and Unknown Merkel, AMF Nurse Practitioner/Medical Doctor Patricia Lewis, and AMF Grievance Coordinator T. Hamel. (Compl., ECF No. 1, PageID.3–5.)

Plaintiff Thomas alleged that Defendants—as a group—were responsible for injuries that the identified plaintiffs had suffered as a result of black mold at AMF and the failure of the medical department to treat plaintiffs for the health consequences of the black mold. Additionally, Plaintiff Thomas claimed that Defendants had threatened each plaintiff.

By order entered October 27, 2023, the Court severed the claims of the other plaintiffs into separate actions; Plaintiff Thomas's claims continued in this action. The Court ordered each plaintiff, including Plaintiff Thomas, to file an amended complaint setting forth the claims of that plaintiff. The amendments were necessary because the initial complaint simply referred to the plaintiffs as a group. The allegations did not clearly and consistently identify which facts applied to which plaintiffs. To remedy that problem, the Court directed each plaintiff to file an amended complaint setting forth the facts that specifically applied to that plaintiff's claims for relief. The Court required each plaintiff to use the Court's approved form complaint, which instructs the plaintiff to state the facts of his case and, specifically, to "[d]escribe how each defendant is personally involved . . . [and to i]nclude also the names of other persons involved, dates and places." (Am. Compl., ECF No. 21, PageID.47.) In response, Plaintiff Thomas filed an amended complaint.

## II.     Plaintiff Thomas's Amended Complaint

Plaintiff Thomas filed his amended complaint on November 26, 2023. The amended complaint names the same defendants as the initial complaint, with one addition, Unknown Smith, an AMF mail room operator, and one clarification, the defendant identified as Merkel in the initial complaint is correctly named as Nurkala in the amended complaint.[2] The amended complaint includes some minimal allegations regarding the black mold and the failure to treat the health problems that Plaintiff Thomas contends were caused by black mold exposure. (*Id*., PageID.49, ¶¶ 9, 10.) The rest of the allegations in the amended complaint are new. Plaintiff Thomas seeks compensatory damages. (*Id*., PageID.50.)

## III.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility

---

[2] Before the Court directed Plaintiff to amend his complaint, Plaintiff Thomas had asked the Court for leave to amend his initial complaint to correct his name, as well as the name of Defendant Nurkala. (ECF No. 13.) Plaintiff's motion seeking that relief was effectively addressed when the Court ordered him to file an amended complaint. Because Plaintiff Thomas changed the names in his amended complaint, the Court will deny his request as moot.

standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

Additionally, it is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 545 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant) (citing *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the

complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."). Moreover, "[s]ummary reference to a single, five-headed 'Defendants' does not support a reasonable inference that each Defendant is liable . . . ." *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Against that backdrop, the Court will address each of Plaintiff Thomas's claims.

### A.      Sovereign Immunity

The caption of Plaintiff's amended complaint identifies the MDOC as the first named defendant. Plaintiff may not maintain a § 1983 action against the MDOC. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g., Harrison v.*

*Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010). In addition, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)); *Harrison*, 722 F.3d at 771. Therefore, the Court will dismiss Plaintiff's claims against the MDOC on grounds of immunity and for failure to state a claim.

### B.   Official Capacity Claims

Plaintiff sues Defendants in their respective official and personal capacities. (Am. Compl., ECF No. 21, PageID.44–46.) A suit against an individual in his or her official capacity is equivalent to a suit brought against the governmental entity: in this case, the MDOC. *See Will*, 491 U.S. at 71; *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). An official-capacity defendant is absolutely immune from monetary damages and that is the only relief Plaintiff seeks against Defendants. *Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998); *Wells v. Brown*, 891 F.2d 591, 592–93 (6th Cir. 1989). Therefore, Plaintiff's claims against each of the individual defendants in that defendant's official capacity are properly dismissed on grounds of immunity.

### C.   Supervisory Liability

For many of Plaintiff Thomas's claims, he refers to some, but not all Defendants, or he refers to a category of actors rather than the specific named Defendants. As the named Defendants represent the entire structural hierarchy of the MDOC, it is possible that Plaintiff seeks to impose liability on the supervisory defendants based solely on their role as the supervisors of those who allegedly directly violated Plaintiff's rights.

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs*., 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Thus, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. To the extent Plaintiff's theory of liability depends on a defendant's supervision of one who directly violated Plaintiff's rights or a defendant's denial or failure to act in response to a grievance, Plaintiff's claim against that defendant fails to state a claim and is properly dismissed.

### D. Plaintiff Thomas's Claims

Plaintiff Thomas's amended complaint renews his claim regarding black mold in his cell and a failure to treat the health consequences of the black mold. (Am. Compl., ECF No. 21, PageID.49, ¶¶ 9–10.) The remaining factual allegations in the amended complaint are new. Indeed, each paragraph (or two) in the amended complaint raises a separate and distinct claim. The Court will address the claims in the order Plaintiff presents them.

### 1. Non-power Segregation Cell

In Paragraph 1 of the amended complaint, Plaintiff alleges:

*1) I was placed in a non-power cell, which is illegal for more than 3 mos. while in segregation. When I wrote a grievance, the C/o's would then retaliate by writing false "Threatening Behavior" misconducts on me.*

(Am. Comp., ECF No. 21, PageID.47, ¶ 1.) The Court liberally construes the first sentence as attempting to state an Eighth Amendment claim with regard to having no power in a segregation cell for more than three months. The Court construes the second sentence as an attempt to state a First Amendment retaliation claim.

### a.      Eighth Amendment claim

As an initial matter, Plaintiff does not identify which of the defendants placed him in the cell. He only says he was placed there. The allegation, therefore, fails to satisfy the "fair notice" requirement of *Twombly*. That deficiency alone warrants dismissal of this Eighth Amendment claim. The same result follows considering Plaintiff's claim on the merits.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part

of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

To prevail on an Eighth Amendment claim, a prisoner must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

Plaintiff reports that placement in a cell without power for three months is illegal. He does not explain why it is illegal. The MDOC policy directive regarding segregation standards contemplates that the power to a segregation cell might be turned off to address health, safety, or security concerns in the unit. MDOC Policy Directive 04.05.120, ¶¶ HH–KK (eff. June 1, 2019).

The policy directive does not place a duration limit on turning off power to a cell beyond the requirement that it be necessary to address health, safety, or security concerns. Thus, it does not appear that the practice is "illegal" from an MDOC-policy perspective.

But, even if the practice violated policy, the violation is not necessarily a constitutional claim. Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994); *see also Laney v. Farley*, 501 F.3d 577, 580–81 & n.2 (6th Cir. 2007).

Moreover, whether or not the long-term placement in a non-power cell violated policy, it is still possible that it might result in the denial of the "minimal civilized measure of life's necessities" and, for that reason, violate the Eighth Amendment. Plaintiff alleges no facts that support the inference that going without power for that period of time deprived him of life's necessities. He does not suggest that he was deprived of essential food, medical care, or sanitation. Indeed, Plaintiff does not allege any harm at all. Other courts have concluded that incarceration without power for shorter periods of time does not rise to the level of an Eighth Amendment violation, even when the prisoner might have been deprived of the use of a fan, television, or other appliance. *See, e.g., Bomer v. Lavigne*, 101 F. App'x 91, 92–93 (6th Cir. 2004) (finding no violation where Plaintiff was deprived of ventilation because of loss of power for three days); *Groomes v. Parker*, No. 08-2028-An/P, 2008 WL 4057763, at *8 (W.D. Tenn. Aug. 2, 2008) (finding no violation where Plaintiff was deprived of the ability to watch television because of a

ten-day power outage)[3]; *Christy v. Lindamood*, No. 1:18-cv-00008, 2018 WL 1907447, at *3, 7 (M.D. Tenn. Apr. 23, 2018) (finding no violation where prisoner was placed in a cell and never had power to operate his CPAP machine, where he alleged no resulting harm); *Peters v. Berghuis*, No. 1:09-cv-14, 2009 WL 261387, at *3–4 (W.D.Mich. Feb. 3, 2009) (finding no violation where power is turned off at night such prisoners could not use cell fans for ventilation). Although the duration was much longer in Plaintiff's case, absent some indication of harm, this Court also concludes that the deprivation was at most an inconvenience and, therefore, does not rise to the level of an Eighth Amendment violation.

In sum, Plaintiff has failed to state an Eighth Amendment claim arising out of his placement in a non-power cell.

### b.      First Amendment Retaliation

Plaintiff next states that he wrote a grievance and, thereafter, unidentified corrections officers retaliated against him by writing false "threatening behavior" misconducts. Plaintiff again, therefore, has not satisfied the "fair notice" requirement of *Twombly*. He does not identify any named defendant as one of the corrections officers who filed a false misconduct. That deficiency alone warrants dismissal of this claim. Consideration of the merits of Plaintiff's allegations yields the same result.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). To set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of

---

[3] The *Groomes* court also noted that there was nothing alleged in the complaint to suggest that the lights in Plaintiff's cell or the temperature controls were affected. *Groomes*, 2008 WL 4057763, at *3 n.3. The same is true in Plaintiff's amended complaint.

ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The filing of a nonfrivolous prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). Plaintiff offers no facts regarding his grievance. It is not clear when he filed it. Logic suggests that the grievance related to Plaintiff's placement in the non-power segregation cell. If that is the case, Plaintiff has adequately alleged protected conduct.

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original).

The penalties associated with a false misconduct would constitute adverse action. Even the smaller penalties associated with a finding of guilt, such as seven days' loss of privileges—which includes loss of the rights to use the exercise facilities, to attend group meetings, to use the telephone, to have visitors, to access the general library, and to access the activity room—amounts to adverse action. *Maben v. Thelen*, 887 F.3d 252, 266–67 (6th Cir. 2018) (quoting *Hill v. Lapin*,

630 F3d 468, 474 (6th Cir. 2010)) (holding that "actions that result in more restrictions and fewer privileges for prisoners are considered adverse").

Plaintiff's one sentence claim falls short, however, with regard to the third element. He alleges no facts to support his conclusory statement that the grievance prompted the false misconduct. It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening) (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998)). Plaintiff merely alleges the ultimate fact of retaliation in this action.[4] He has not presented any facts to support his conclusion

---

[4] In some circumstances, temporal proximity "may be 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004) (quoting *DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004). Here, the allegations regarding temporal proximity of the adverse action to the protected conduct do not even rise to the level of conclusory. All that Plaintiff alleges is that a grievance preceded the misconduct. He offers no clue with regard to how closely one followed the other.

that the unnamed corrections officers retaliated against him because he filed a grievance against some unnamed person. Accordingly, his speculative allegation fails to state a claim.

For all of these reasons, Plaintiff has failed to state a First Amendment retaliation claim.

### 2.     Notarization of Forms

In Paragraphs 2 and 3 of the amended complaint, Plaintiff alleges:

> 2) While in G.P. (4/1/23), I requested for a Notary Public to have a "Power Of Attorney" & "Co-Power Of Attorney" for my mother & also younger brother and P.C. Kowalski & R.U.M Perttu refused.

> 3) On 4/13/23, I again tried to get my forms notarized and again both the above named refused. I proceeded to write a grievance and DEPUTY WARDEN Hoffman & I, Namel rejected it a Steps I-II.

(Am. Comp., ECF No. 21, PageID.47, ¶¶ 2–3.) The Court liberally construes Plaintiff's allegations as an attempt to state a claim for violation of his First Amendment right to access the courts and, possibly, a claim for denial of due process with respect to rejection of his grievance.

### a.     Access to the Courts

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824–25. The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351–53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (discussing that *Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 415.

17

Plaintiff does not reference any connection between his proposed powers of attorney and a direct appeal, habeas corpus petition, or civil rights claim. Additionally, to state a claim, an inmate must show that any shortcomings in the library, litigation tools, or legal assistance caused actual injury in his pursuit of a legal claim. *Lewis*, 518 U.S. at 351; *Talley-Bey*, 168 F.3d at 886; *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996); *Walker v. Mintzes*, 771 F.2d 920, 932 (6th Cir. 1985). Plaintiff has not alleged that he suffered any actual injury in a direct appeal, habeas corpus petition, or civil rights case by virtue of the refusals to notarize his proposed power of attorney documents.

For these reasons, Plaintiff has failed to state a claim for interference with his First Amendment right to access the courts.

### b.       Due Process Right to File a Grievance

The actions of Defendants Hamel and Hoffman in rejecting Plaintiff's grievance regarding the refusal to notarize his documents do not give rise to a constitutional claim. Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendants' conduct did not deprive him of due process.

18

Additionally, Plaintiff's right to petition government is not violated by Defendant's failure to process or act on his grievances. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond).

Moreover, Defendants' actions have not barred Plaintiff from seeking a remedy for his grievances. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis*, 518 U.S. at 355 (requiring actual injury); *Bounds*, 430 U.S. at 821–24 (1977). The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials,

the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470–71 (6th Cir. 2001).

Finally, Hoffman's and Hamel's rejection of Plaintiff's grievances would not somehow render them liable for the complaint raised in the grievance. As noted above, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee*, 199 F.3d at 300.

For all of these reasons, Plaintiff has failed to state a claim relating to the rejection of his "notary refusal" grievance.

### 3.     Damage to Books and Interference with Mail

In Paragraph 4 of the amended complaint, Plaintiff alleges:

> 4) Mailroom Smith consistantly defaced & devalued books that I ordered from "Edward R Namilton" Bargain Books. These particular books are "Collector's Editions." While I first brought it to the attention to Inspector Miller (then R.V.M. Miller), he stated that it shouldn't be happening. They were to come w/ silk ribbon bookmarks. He stated, "They aren't breaking any policies." Afterwards, I stopped receiving some personal mail. My family also said that letters I sent to them never arrived. And books kept coming defaced, so I stopped ordering those types until I leave here.

(Am. Comp., ECF No. 21, PageID.47, ¶ 4.) Plaintiff's allegations implicate the protections of Fourteenth Amendment due process as well as First Amendment rights relating to communication by mail.

### a.     Due Process

Plaintiff alleges that Defendant Smith "devalued" Plaintiff's books by removing "silk ribbon bookmarks." He seeks compensation for the damaged property. (Am. Compl., ECF No. 21,

PageID.50.) Essentially, Plaintiff claims that Defendant Smith deprived him of property without due process of law in violation of the Fourteenth Amendment.

Plaintiff's due process claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivations of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments or officers." Mich. Comp. Laws § 600.6419(1)(a). The Sixth Circuit has specifically held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the damage Smith caused to Plaintiff's books. Accordingly, Plaintiff's has failed to state a claim upon which relief may be granted.

21

### b.      First Amendment Right to Send and Receive Mail

Plaintiff reports that he stopped receiving "some personal mail" and Plaintiff's family informed him that letters he sent never arrived. "A prisoner's right to receive mail is protected by the First Amendment." *Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). "Mail is one medium of free speech, and the right to send and receive mail exists under the First Amendment." *Al-Amin v. Smith*, 511 F.3d 1317, 1333 (11th Cir. 2008) (citing *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 427 (1993)). A prisoner, however, retains only those First Amendment freedoms which are "not inconsistent with his status as a prisoner or with legitimate penological objectives of the corrections systems." *Martin v. Kelley,* 803 F.2d 236, 240 n.7 (6th Cir. 1986) (*quoting Pell*, 417 U.S. at 822); *see Turner v. Safley,* 482 U.S. 78 (1987).

In this instance, there is no reason to believe that the mail that Plaintiff did not receive or the mail that he unknowingly was unable to send was held because of some penological objective, legitimate or otherwise. But there is also no reason to believe that Plaintiff's mail did not arrive or go out as planned because of Defendant Smith. Plaintiff alleges no facts from which the Court might infer that Defendant Smith had any involvement in the mail at issue. The allegations, therefore, fail to satisfy the "fair notice" requirement of *Twombly*. For that reason, Plaintiff has failed to state a claim upon which relief may be granted.

### 4.      Incentives in Segregation Program

In paragraph 5 of the amended complaint, Plaintiff alleges:



5) While I was in the "hole" (segregation) I constantly informed both staff & P.C. that I didn't want to participate in the "IISP" Incentive Program. Policy clearly states that it's voluntary, but I was told that I had no choice. I was even visited by ADW Horrocks and DW Hoffman and I had written several grievances about this.

5) (cont.) ADW Horrocks stated that they don't follow the policy here, that it's mandatory. DW Hoffman stated they were allowed to violate the policy, because they're Baraga and they do what they want.

(Am. Comp., ECF No. 21, PageID.47–48, ¶ 5.)

It is not entirely clear what conduct by Defendants Horrocks or Hoffman violated Plaintiff's constitutional rights. To the extent Plaintiff contends he is entitled to relief because the Defendants' actions violated MDOC policy,[5] he fails to allege a constitutional claim. Claims under

_____

[5] The MDOC policy directive regarding segregation standards describes the Incentives in Segregation Program (IISP) as follows:

> The IISP program is a six stage progression of behavior expectations and incentives to encourage appropriate conduct by the prisoner. Prisoners in the program will have a clear understanding of the conduct that is expected from them for successful progression through and completion of the program. Staff shall look at the prisoner's progress in meeting these expectations when making behavior-based recommendations for or against the prisoner's reclassification. Prisoners who have satisfactorily completed the program shall be considered for reclassification.

MDOC Policy Directive 04.05.120 ¶ QQQ (eff. June 1, 2019). The program follows a manual maintained by the Central Facilities Administration Deputy Director. *Id*. ¶ SSS. Prisoners have claimed that their forced participation in the IISP violates their constitutional rights in different ways. *See, e.g.*, *Jamerson v. Taskila*, No. 2:22-cv-98, 2022 WL 1769085 (W.D. Mich. June 1, 2022) (rejecting a claim that denial of telephone privileges because the privilege is a later-stage IISP incentive violates a prisoner's First Amendment, Eighth Amendment, or Fourteenth Amendment due process rights); *Bailey v. Skytta*, No. 2:17-cv-187, 2018 WL 1773223 (W.D. Mich. Apr. 13, 2018) (rejecting prisoner's claim that forced participation in IISP violated the prisoner's due process rights); *Jackson v. Huss*, No. 1:14-cv-426, 2015 WL 5691026 (W.D. Mich. Sept. 28, 2015) (rejecting prisoner's claim that forced participation in IISP was an adverse action taken in retaliation for protected conduct); *Patterson v. Heyns*, No. 2:14-cv-118, 2014 WL 5392057 (W.D. Mich. Oct. 23, 2014) (rejecting a claim that forced participation in IISP and the

§ 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar*, 457 U.S. at 9242). Section 1983 does not provide redress for a violation of a state law. *Pyles*, 60 F.3d at 1215; *Sweeton*, 27 F.3d at 1166; *see also Laney*, 501 F.3d at 580–81 & n.2 (6th Cir. 2007).

It is also possible that Plaintiff is claiming that denying him his "right" to choose whether to participate in the Incentives in Segregation Program is a deprivation of his liberty without due process of law. "The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

There was a time when identifying protected interests focused on the mandatory character of the language in corrections department policies—in this case language giving prisoners the

---

resulting deprivation of a television set or commissary privileges until the prisoner reached a higher IISP level violated the prisoner's due process rights or Eighth Amendment rights); *Butts v. McKeon*, No. 2:12-cv-48, 2012 WL 2089960 (W.D. Mich. June 8, 2012) (rejecting a claim that forced participation in IISP and the resulting deprivation of a television set until the prisoner reached a higher IISP level violated the prisoner's due process rights); *Royster v. Sweeney*, No. 2:10-cv-202, 2011 WL 124514 (W.D. Mich. Jan. 13, 2011) (same). It is interesting to note that all but one of the above-cited cases involve AMF's Incentives In Segregation Program. In one of the cases, *Butts*, the prisoner included the IISP Program Manual and the AMF Administrative Segregation Unit Rules as an exhibit to the complaint. *Butts*, No. 2:12-cv-48 (W.D. Mich.), (ECF No. 1-5, PageID.33–46.) It is noteworthy that the *Butts* IISP program manual does not indicate that the program is voluntary or mandatory, but the AMF Administrative Segregation Rules—at least back in 2010—clearly stated that the program was voluntary. (*Id.*)

24

option to choose to participate in the IISP. That time has passed. The Sixth Circuit Court of

Appeals described the shift in *Bethel v. Jenkins*, 988 F.3d 931 (6th Cir. 2021), as follows:

> Before the Supreme Court's decision in *Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), prison regulations were found to create protected liberty interests when those regulations "used language of an unmistakably mandatory character," such as, for example, "requiring that certain procedures 'shall,' 'will,' or 'must' be employed." *Hewitt v. Helms*, 459 U.S. 460, 471, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983). Accordingly, in *Spruytte v. Walters*, we found, based on *Hewitt*, that a Michigan prison regulation created a protected interest to receive any book not deemed to be a security threat because the regulation contained "specific, substantive criteria restrict[ing] officials' discretion." 753 F.2d 498, 507–08 (6th Cir. 1985), *abrogation recognized by Virgili v. Gilbert*, 272 F.3d 391 (6th Cir. 2001). However, in *Sandin*, the Supreme Court explicitly rejected the approach from *Hewitt* and held that liberty interests arising from state prison regulations are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." 515 U.S. at 484, 115 S.Ct. 2293 (citations omitted).

*Bethel*, 988 F.3d at 942–43 (footnote omitted).

The United States Supreme Court long has held that the Due Process Clause does not

protect every change in the conditions of confinement having an impact on a prisoner. *See*

*Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin*, the Supreme Court set forth the standard

for determining when a state-created right creates a federally cognizable liberty interest protected

by the Due Process Clause. 515 U.S. 472, 484 (1995). According to that Court, a prisoner is entitled

to the protections of due process only when the "duration of his sentence" is at stake or when a

deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary

incidents of prison life." *Id.* at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998);

*Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995).

Here, Plaintiff alleges that he was involuntarily classified to AMF's Incentives in

Segregation Program. There is no suggestion that the IISP participation has any impact on sentence

25

duration; thus, to show a due process violation, Plaintiff must demonstrate that the resulting harsh conditions of the program constitute atypical and significant hardships.

As an initial matter, the Supreme Court repeatedly has held that a prisoner has no constitutional right to be incarcerated in a particular facility or to be held in a specific security classification. *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum*, 427 U.S. at 228–29. With respect to a prisoner's detention in segregation, generally only periods of segregation lasting for a year or more have been found to be atypical and significant. *See, e.g.*, *Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (concluding that thirteen years of segregation implicates a liberty interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (finding that eight years of segregation implicates a liberty interest); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008) (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, i.e., three years without an explanation from prison officials, implicates a liberty interest). Here, at the time that Plaintiff filed his complaint, he had been in the IISP for less than a year.

Moreover, this Court has repeatedly held that the segregation conditions in the IISP at AMF do not constitute atypical and significant hardships. *See supra* note 5. Plaintiff has not alleged any facts to suggest that the conditions he faces are any worse than those faced by the other prisoner-plaintiffs who raised the same claim or any worse than the conditions in segregation generally. Confinement in administrative segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt*, 459 U.S. at 468 (superseded by statute on other grounds). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin,* 410 F. App'x 865, 868 (6th Cir. 2010). Plaintiff has failed to allege any extreme circumstances that might render his time in the IISP an atypical or

significant hardship. Accordingly, Plaintiff has failed to state a claim that compelling him to participate is a deprivation of liberty that would be protected by due process.

It might also be that Plaintiff contends that the conditions in the IISP rise to the level of cruel and unusual punishment and, therefore, violate the Eighth Amendment. Placement in segregation is a routine discomfort that is "'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). Although it is clear that Plaintiff is denied certain privileges as a result of his stay in administrative segregation and his placement in the IISP, he does not allege or show that he is being denied basic human needs and requirements. The Sixth Circuit has held that without a showing that basic human needs were not met, the denial of privileges as a result of administrative segregation cannot establish an Eighth Amendment violation. *See Evans v. Vinson*, 427 F. App'x 437, 443 (6th Cir. 2011); *Harden-Bey*, 524 F.3d at 795. As a result, Plaintiff fails to state an Eighth Amendment claim relating to the IISP.

### 5.     Beets Allergy

In paragraph 6 of the amended complaint, Plaintiff alleges:



(Am. Comp., ECF No. 21, PageID.48, ¶ 6.) The allegations implicate the protections of the Eighth Amendment.

"The Eighth Amendment imposes a duty on officials to provide 'humane conditions of confinement,' including insuring, among other things, that prisoners receive adequate . . . food . . . ." *Young ex rel. Estate of Young v. Martin*, 51 F. App'x 509, 513 (6th Cir. 2002) (quoting *Farmer*, 511 U.S. at 832). The Constitution "does not mandate comfortable prisons," however. *Rhodes*, 452 U.S. at 349. "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. Thus, the deprivation of a few meals for a limited time generally does not rise to the level of an Eighth Amendment violation. *See Cunningham v. Jones*, 667 F.2d 565, 566 (6th Cir. 1982) (per curiam) (providing a prisoner only one meal per day for fifteen days did not violate the Eighth Amendment, because the meals provided contained sufficient nutrition to sustain normal health); *Davis v. Miron*, 502 F. App'x 569, 570 (6th Cir. 2012) (denial of seven meals over six days is not an Eighth Amendment violation); *Richmond v. Settles*, 450 F. App'x 448, 456 (6th Cir. 2011) (denial of five meals over three consecutive days, and a total of seven meals over six consecutive days, does not rise to Eighth Amendment violation, where the prisoner fails to allege that his health suffered); *see also Berry v. Brady*, 192 F.3d 504, 507–08 (5th Cir. 1999) (denial of a few meals over several months does not state a claim); *Staten v. Terhune*, 67 F. App'x 462, 462–63 (9th Cir. 2003) (deprivation of two meals is not sufficiently serious to form the basis of an Eighth Amendment claim); *Cagle v. Perry*, No. 9:04-CV-1151, 2007 WL 3124806, at *14 (N.D.N.Y. Oct. 24, 2007) (deprivation of two meals is "not sufficiently numerous, prolonged or severe" to give rise to an Eighth Amendment claim).

Plaintiff's allegation that, because of the actions of "them"—presumably unnamed corrections officers working on the segregation unit—on the days that beets were served, due to Plaintiff's allergy, he sometimes would not eat if there were beets on his tray. It would certainly

be reprehensible for a corrections officer to purposely expose a prisoner to a food that might cause an allergic reaction; but Plaintiff's allegations do not support an inference that he was deprived of anything more than a few meals. That would not suffice to state a claim under the objective prong of the deliberate-indifference standard. Consequently, Plaintiff does not state a plausible claim. *See Iqbal*, 556 U.S. at 679 (noting that the allegations must permit an inference of more than a "mere possibility" of misconduct).

Moreover, even if Plaintiff missed enough meals over a short enough period of time such that he was deprived of life's necessities, he has not identified the perpetrators. The allegations, therefore, fail to satisfy the "fair notice" requirement of *Twombly*.

### 6.   Retaliation for Conduct Protected by the First Amendment

In Paragraph 7 of the amended complaint, Plaintiff alleges:

> 7) When I made my stages in the IISP, they would refuse to move me to a power cell. Then, when I addressed the issue, both verbally & with a grievance, they would retaliate by refusing me any allotted phone calls, passing my cell for yard and even denying me my store items. Once, I was denied my store entirely. C/o's were actually overheard stating that myself, Glover, Lindsey and Gleason had nothing coming, as far as, our allowed privileges were concerned.

(Am. Comp., ECF No. 21, PageID.48, ¶ 7.) This paragraph may be a restatement of the allegations in Paragraph 1 or it is possible that this is a new grievance and oral complaint. Whether Plaintiff's stated his grievance in writing or orally, it appears to be "protected conduct." An inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben*, 887 F.3d at 265; *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison officer] regarding the anti-Muslim harassment he

29

endured at work constitutes protected activity under the First Amendment."); *Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006) ("[W]e decline to hold that legitimate complaints lose their protected status simply because they are spoken."); *see also Pasley v. Conerly*, 345 F. App'x 981, 984–85 (6th Cir. 2009) (finding that a prisoner engaged in protected conduct by *threatening* to file a grievance). "Nothing in the First Amendment itself suggests that the right to petition for redress of grievances only attaches when the petitioning takes a specific form." *Holzemer v. City of Memphis*, 621 F.3d 512, 521 (6th Cir. 2010) (finding that a conversation constituted protected petitioning activity) (quoting *Pearson*, 471 F.3d at 741).

The identified "adverse actions" are new and are not set forth in Paragraph 1. As noted above, denial of privileges amounts to adverse action. *Maben*, 887 F.3d at 266–67 (quoting *Hill*, 630 F3d at 474) (holding that "actions that result in more restrictions and fewer privileges for prisoners are considered adverse").

Plaintiff's allegations regarding the third element, however, again fall short. He states in a conclusory fashion that the actions were retaliatory. He alleges no facts to support that conclusory statement. It appears the adverse actions were subsequent to the protected conduct; but there is no indication of temporal proximity sufficient to support an inference of retaliatory motive.

Moreover, Plaintiff has not identified the perpetrators. The allegations again fail to satisfy the "fair notice" requirement of *Twombly*.

### 7.   Property Reimbursement Claim

In paragraph 8 of the amended complaint, Plaintiff alleges:

8. I was denied property reimbursement after properly filing paperwork. Then, I wasn't even informed of the denial for 2 mos. after the decision was made. In fact, I had to kite the Business Office to find out I was denied, because they weren't even gonna notify me.

(Am. Comp., ECF No. 21, PageID.49, ¶ 8.) It appears that Plaintiff is claiming he was denied due process when he submitted a claim for property reimbursement.

Plaintiff may have suffered a property loss that prompted him to file a claim for property reimbursement—perhaps the claim related to the silk bookmarks referenced in Paragraph 4 of the amended complaint. To the extent that Plaintiff offers the allegation to suggest that the state's post-deprivation remedies are inadequate, he has not succeeded. He must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland*, 57 F.3d at 479–80; *Gibbs*, 10 F.3d at 378. Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. *See Brooks*, 751 F.2d at 197.

Plaintiff has not sustained his burden in this case. Even if Plaintiff's "property reimbursement" remedy failed, he has not alleged that state post-deprivation remedies are inadequate. As explained above, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments or officers." Mich. Comp. Laws § 600.6419(1)(a). The Sixth Circuit has specifically held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the damage Smith caused to Plaintiff's books. Accordingly, Plaintiff has failed to state a claim upon which relief may be granted.

Alternatively, the property reimbursement claim might be unrelated to the silk bookmarks and Plaintiff might be claiming a property interest in the reimbursement claim that, by virtue of inadequate processing or notice, was taken from him without due process. That claim, too, would be barred by *Parratt* for the same reasons that the silk bookmark claim is barred: the state provides an adequate post-deprivation remedy in the Michigan Court of Claims.

Moreover, once again, Plaintiff has not identified the perpetrators. Therefore, the allegations again fail to satisfy the "fair notice" requirement of *Twombly*.

### 8.   Black Mold

In paragraphs 9 of the amended complaint, Plaintiff alleges:



(Am. Comp., ECF No. 21, PageID.49, ¶ 9.)

And in paragraph 10 of the amended complaint, Plaintiff reports:

(Am. Comp., ECF No. 21, PageID.49, ¶ 10.)



(Am. Comp., ECF No. 21, PageID.49, ¶ 10.)

32

Plaintiff's allegations implicate his Eighth Amendment rights with regard to the presence of black mold in Plaintiff's cell. The allegations regarding Nurse Lewis also implicate the protections of the Eighth Amendment in that Plaintiff contends that Lewis has demonstrated deliberate indifference to Plaintiff's serious medical needs. Finally, the allegations regarding Defendant Hamel appear to be another attempt to state a First Amendment retaliation claim.

### a.     Black Mold in the Cell

As noted above, for a condition of confinement to violate the Eighth Amendment, it must effectively deny the prisoner the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347. It is certainly possible that exposure to black mold might be sufficiently serious to satisfy the objective requirement; but simply alleging the presence of black mold is not enough. *See, e.g.*, *McIntyre v. Phillips*, No. 1:07-cv-527, 2007 WL 2986470, at *2–4 (W.D. Mich. Sept. 10, 2007) (citing *Brady v. State Farm Fire & Cas. Co*., No. 05-30716, 2006 WL 551388, at *3 (5th Cir. Mar. 8, 2006); *Board v. Farnham*, 394 F.3d 469, 486 (7th Cir. 2005)), *report and recommendation adopted*, (W.D. Mich. Oct. 10, 2007) (dismissing prisoner action and holding that some exposure to black mold is a risk society has chosen to tolerate). Courts have looked to several factors to determine if the presence of black mold constitutes a risk of serious harm. The cases indicate that exposure to black mold satisfies the objective standard if the prisoner alleges physical injury as a result of the exposure. *See, e.g.*, *Whiteside v. Smith*, No. 22-1071-SHM-tmp, 2023 WL 4410510, at *8 (W.D. Tenn. July 7, 2023) ( "Whiteside's allegation of harm from the Shower Conditions could plausibly satisfy the objective component of the Eighth Amendment . . . ."); *Henderson v. Parin*, No. 3:22-cv-228, 2023 WL 369954, at *3 (S.D. Ohio Jan. 24, 2023) (report and recommendation concluding that the complaint must be dismissed "because plaintiffs have failed to allege that they suffered a physical injury that was caused by exposure to black mold"; case voluntarily dismissed by Plaintiff after entry of the R&R); *Brown v. Penick*, No. 1:22-

CV-P99-GNS, 2022 WL 16702802, at *7 (W.D. Ky Nov. 2, 2022) (finding that "because Plaintiff does not allege that the presence of mold in his cell caused him a health problem or created a substantial risk to his health . . . this claim must be dismissed for failure to state a claim upon which relief may be granted"); *Rogers v. MacClaren*, No. 1:20-CV-263, 2020 WL 3481541, at *8 (W.D. Mich. June 26, 2020) ( "Plaintiff does not suggest that the mold is airborne, and he does not allege that the presence of mold caused him a health problem or created a substantial risk to his health. As a consequence, Plaintiff's allegations about the presence of mold do not demonstrate the existence of a sufficiently serious risk to prisoner health."). Plaintiff makes an allegation of physical injury resulting from black mold exposure in this case.[6] Accordingly, the Court concludes that he has satisfied the objective standard at this early stage.

Plaintiff's claim falls apart, nonetheless, because he does not allege that any of the named defendants were aware of the black mold and then consciously disregarded the risk it posed to Plaintiff. He states only that he informed staff that his cell had black mold and that they refused to move him. Plaintiff's allegations fall far short of the *Twombly* requirement of fair notice. Because Plaintiff's allegations do not satisfy the subjective component with regard to the named defendants and this conditions-of-confinement claim, he has failed to state a claim upon which relief may be granted.

**b.  Deliberate Indifference to Serious Medical Needs**

The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards

---

[6] Specifically, Plaintiff alleges that he gets "troublesome scars in the left nostril," that he "constantly cough[s] out & blow[s] out green mucus, sometimes w[ith] blood[,] sometimes w[ith] black flake-like particles, & sometimes both," that he has "low testosterone levels, as well as increased breast tissue," and apparently a lump which has subsided. (Am. Compl., ECF No. 21, PageID.49.)

34

of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

Deliberate indifference may be manifested by a doctor's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05.

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g., Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person

would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842)).

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (2014). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster*, 749 F.3d at 448; *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

Plaintiff reports scars in his left nostril and the production of green mucus that he coughs up or blows out his nose, sometimes with blood and sometimes with black flakes in it. He states that he believes he has low testosterone; but he does not explain why he has that belief. And he complains of increased breast tissue. It is difficult to assess whether any of these symptoms evidence a substantial risk of serious harm.

But, even if Plaintiff's nose and throat symptoms and his subsided lump do constitute a serious medical need, Plaintiff has not alleged facts that support an inference that any of the named defendants consciously disregarded that risk. He does not say that any defendant refused to see him or refused to provide diagnostic tests or refused to treat him. He says only that Defendant Lewis did not believe his symptoms were caused by black mold. Disagreements with regard to diagnosis and challenges to the adequacy of the treatment offered might state a negligence claim, but they do not state an Eighth Amendment deliberate indifference claim.[7]

Because Plaintiff has failed to allege facts that support an inference of someone's conscious disregard of a serious medical need, he has failed to state an Eighth Amendment claim relating to his medical treatment. Plaintiff's cryptic pleading style leaves gaping holes in his account. At best his claims are ambiguous. It appears that he is asking the Court to infer plausibility from that ambiguity. Under the notice pleading standard, however, such ambiguity is insufficient to support a claim.

---

[7] Plaintiff makes some additional allegations. He states that he did not get an ointment he wanted— but he does not say to whom he made the request and whether the request was refused. And Plaintiff notes that it took too long to get a mammogram—but he does not say to whom he made the request, whether it was initially denied or otherwise delayed, or why. Moreover, he does not suggest that any delay he experienced in getting a mammogram caused him any harm. These complaints against an unidentified person or persons also focus on the adequacy of diagnosis and treatment and, thus, fall short.

### c.      Defendant Hamel's Threat of Modified Access

Finally, Plaintiff has failed to state a claim relating to Defendant Hamel's reported threat

to put Plaintiff on "lifetime grievance restriction" if Plaintiff continued to file grievances.  The

MDOC policy directive regarding grievances permits certain MDOC personnel to put a prisoner

who files an excessive number of rejected or unfounded grievances on a grievance restriction.

MDOC Policy Directive, 03.02.130, ¶¶ PP–SS (eff. Sept. 25, 2023). The restriction does not forbid

grievances, it simply requires the prisoner to obtain grievance forms only through the Step I

Grievance Coordinator. The grievance form is provided if the Step I Grievance Coordinator

determines that the issue the prisoner or parolee wishes to grieve is grievable and otherwise meets

the criteria outlined in the grievance policy.

A threat to put a prisoner on modified access would appear to cover all three elements of a

First Amendment retaliation claim. The filing of a grievance is plainly protected conduct and the

action threatened by Hamel is plainly motivated by the protected conduct. Placement on modified

access, however, is not "adverse action."

As the Sixth Circuit Court of Appeals explained in *Walker v. Mich. Dep't of Corr*., 128 F.

App'x 441 (6th Cir. 2005):

> [A]n ordinary person of reasonable firmness would not be deterred from filing
> legitimate grievances by a policy that merely provided that a grievance officer
> would screen frivolous grievances. Since the only penalty for filing a grievance
> found to be frivolous is extension of modified status, there should be no chilling
> effect on the filing of non-frivolous grievances.

*Id*. at 446[8]; *see also Jackson v. Madery*, 158 F. App'x 656, 660 (6th Cir. 2005) *overruled on other*

*grounds by Maben*, 887 F.3d at 262 (holding that "[b]eing placed on modified access status would

---

[8] There is a difference between a time-limited placement on "modified access" as contemplated by
the policy directive and the "lifetime" restriction reportedly threatened by Hamel. That difference,
however, does not undermine the reasoning of the court of appeals. The only penalty occasioned

not deter a person of ordinary firmness from pursuing non-frivolous grievances against prison officials, within the courts or the prison administrative system"); *Alexander v. Vittitow*, No. 17-1075, 2017 WL 7050641, at *5 (6th Cir. Nov. 9, 2017) (noting "the claim was subject to dismissal because placement on modified access does not constitute an adverse action for purposes of a retaliation claim"); Colvin v. Foy, No. 14-1456, 2015 WL 13927277, at *1 (6th Cir. June 18, 2015) (finding that "placement on modified access status does not rise to the level of adverse action that is required for a retaliation claim"); *Kennedy v. Tallio*, 20 F. App'x 469, 471 (6th Cir. 2001) (stating that "[p]lacement on modified access to the grievance procedure does not constitute such an [adverse] action")

Accordingly, Plaintiff has failed to state a claim for First Amendment retaliation against Defendant Hamel.

## <u>Conclusion</u>

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court notes that it has already afforded Plaintiff an opportunity to amend his complaint once and that Plaintiff was instructed to "[d]escribe how each defendant is personally involved . . . [and to i]nclude also the names of other persons involved, dates and places." (Am. Compl., ECF No. 21, PageID.47.) Plaintiff disregarded those instructions.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir.

---

by modified access is screening for frivolous grievances and that should cause no chilling effect no matter how long the screening continues.

1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $605.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $605.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:    March 11, 2024                      /s/ *Maarten Vermaat*
                                              Maarten Vermaat
                                              United States Magistrate Judge